IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL SALVAGE AND SERVICE CORPORATION, | ) ) ) | Case No. 3:21-cv-138 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| PRISTINE RESOURCES, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

I.  Introduction

Plaintiff National Salvage and Service Corporation ("Plaintiff" or "National") filed a Petition for Declaratory Judgment in the Court of Common Pleas of Cambria County, Pennsylvania. (ECF No. 1-2 at 7–10). Defendant Pristine Resources Land LLC ("Defendant" or "Pristine")[1] has removed the declaratory judgment action to this Court. (ECF No. 1).

Presently before the Court is National's Motion to Remand. (ECF No. 5). The Motion has been fully briefed (ECF Nos. 5, 7) and is ripe for disposition.

For the reasons that follow, National's Motion is **DENIED**.

---

[1] The Court notes that the caption of this case indicates that Defendant's name is Pristine Resources, Inc. However, in its Response in Opposition to National's Motion to Remand, Defendant states that its name is actually Pristine Resources Land LLC. (ECF No. 7 at 1).

II. Venue[2]

Because this action was originally filed in the Court of Common Pleas of Cambria County, Pennsylvania, (ECF No. 1), venue is proper in this Court pursuant to 28 U.S.C. Section 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 666 (1953) (explaining that the proper venue of a removed action "is 'the district court of the United States for the district and division embracing the place where such action is pending'") (quoting 28 U.S.C. § 1441(a)).

III. Background

A. Factual Background[3]

On June 30, 2021, National filed a Petition for Declaratory Judgment, seeking a declaration regarding the validity of an easement (the "Easement"). (*See* ECF No. 1-2 at 7–11). Because that Easement is central to National's Motion to Remand, the Court begins by reviewing its history.

On or about September 8, 1989, BethEnergy Mines, Inc. ("BethEnergy") granted Cambria Cogen Company ("Cambria Cogen") an Easement "pertaining to one (1) underground raw water pipeline, one (1) underground wastewater pipeline and an electric powerline, together with all appurtenances related to the pipelines and powerline" by way of an Easement Agreement. (*Id.* at 7–8). Cambria Cogen used the Easement to obtain water from a certain pump house and metering station near the Wilmore Dam and bring that water to the Cambria Cogen property. (*Id.* at 8).

On November 8, 2019, National purchased the "real estate and physical plant, including Water Assets and the Easement," from Cambria Cogen. (*Id.*). Further, Pristine is a successor to

---

[2] The parties dispute subject-matter jurisdiction, and the Court will discuss that matter below.

[3] The Court derives these factual allegations from National's Petition for Declaratory Judgement. (ECF No. 1-2 at 7–10).

BethEnergy. (*Id.* at 7). Therefore, the Easement Agreement entered into by BethEnergy and Cambria Cogen now binds National and Pristine. (*Id.* at 8).

In relevant part, the Easement Agreement provides the following:

> [I]f the Grantee [Cambria Cogen and National, as successor] shall at any time cease to use or maintain the facilities and the non-user shall continue uninterrupted by any use by the Grantee for a period of one (1) year or longer … the easement and right-of-way herein granted shall at the option of the Grantor [BethEnergy and Pristine … as successor] immediately terminate and the Grantee shall thereupon remove the facilities from said lands of the Grantor with all reasonable speed …. The easement granted hereby shall be an easement appurtenant and shall run with the title of the land to be conveyed to the Grantee …. The said lands shall be the servient tenement and the Facility Lands [National Salvage's Property] shall be the dominant tenement.

(*Id.*) (quoting *id.* at 20).

According to Pristine, the "Easement has not been used since mid-June 2020 and thus, has terminated and is no longer in effect with the exception of [National's] obligation to remove the pipelines and reclaim the area affected by their removal." (*Id.* at 9). National disagrees, contending that it has "continuously used the stormwater pipeline, thus it complied with … the Easement and the Easement remains valid." (*Id.*).

B.  **Procedural History**

On August 12, 2021, Pristine removed the action to this Court. (ECF No. 1). In its Notice of Removal, Pristine states that this Court "has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship. This lawsuit is a civil action where the parties are

citizens of different states and in which Plaintiff seeks declaratory judgment where the amount in controversy is in excess of $75,000." (*Id.* at 1–2).

On September 3, 2021, National filed a Motion to Remand this case to the Court of Common Pleas of Cambria County, Pennsylvania. (ECF No. 5). National does not dispute the parties' diversity. (*See* ECF No. 5).[4] However, National contends that this action does not satisfy the amount in controversy requirement. (ECF No. 5 at 2).

On September 10, 2021, Pristine submitted its Response in Opposition to National's Motion. (ECF No. 7). Finally, on September 23, 2021, the Court heard oral argument regarding the Motion. (ECF No. 10).

## IV. Discussion

### A. Parties' Arguments

National argues that the amount in controversy requirement is not satisfied because National does not seek "monetary damages, but rather declaratory judgment holding the

---

[4] In National's Petition, it alleges that it is a "corporation organized and existing under the laws of the State of Indiana[,]" and Pristine is a corporation organized and existing under the laws of Delaware. (ECF No. 1-2 at 7). In like fashion, in its Notice of Removal, Pristine contends that National is a "corporation organized and existing under the laws of the State of Indiana[,]" and it is a "corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Ohio." (ECF No. 1 at 2). Given these allegations, it appears that there is complete diversity of citizenship between the parties.

However, Pristine also states that it is a "Delaware limited liability company." (ECF No. 6 at 1). This averment is important because the citizenship of a limited liability company is determined by the citizenship of each of its members, *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010), and Pristine has not provided the Court with a statement indicating the citizenship of its members. (ECF Nos. 1, 6, 7).

Still, the Court is without any indication that any member of Pristine is a citizen of Indiana. Therefore, the Court will proceed with the understanding that Pristine is not a citizen of Indiana, meaning that there is complete diversity of citizenship between the parties.

4

[E]asement is valid." (ECF No. 5 at 2). Further, with respect to Pristine's contention that National would be "responsible for removing thousands of feet of pipes and reclaim[ing] the property" in the event the Easement is deemed invalid, National asserts that, if it must remove the pipes, it will cost far less than $75,000 to do so. (*Id.*). Finally, National contends that the "obligation to remove the pipes is not a matter before the Court for this action." (*Id.*).

In response, Pristine argues that it is well settled that "the measure of the amount in controversy in a declaratory judgment action is the reasonable value of the relief sought[.]" (ECF No. 7 at 2).

Further, Pristine contends that National's "assertion as to the value of the controversy defies logic. The subject of the litigation is whether thousands of feet of underground pipelines and appurtenances thereto … must be removed and the land restored to its original condition as per the terms of the Easement Agreement." (*Id.* at 4). In this vein, Pristine provided the Court with a declaration from Mr. Larry Neff ("Mr. Neff"), Manager of Operations for Pristine, regarding the cost of restoring the Easement and right of way land in the event that the Easement is no longer valid. (*Id.* at 4–5). According to Mr. Neff, if the Easement is declared invalid, National "will be required to remove thousands of feet of pipe and restore and reclaim the land … [and]

[b]ased on [his] experience as Manager of Operations ... [he] can say to a reasonable degree of certainty that the cost of such a project will be approximately $716,464.04." (ECF No. 7-1).

Finally, Pristine disagrees with National's assertion that its "reclamation obligations are not a matter before the Court in this action[.]" (ECF No. 7 at 2–3). Pristine contends that National raised this very issue in its Petition for Declaratory Judgment. (*Id.* at 3).

B.   **Legal Standard**

"Removal of cases from state to federal courts is governed by 28 U.S.C. § 1441." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Pursuant to Section 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"[5] 28 U.S.C. § 1441(a). Under the diversity-jurisdiction doctrine applicable here, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). If at "any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Regarding the "jurisdictional amount in controversy requirement, when a party has not pled a specific sum of damages in the complaint, the notice of removal may assert the amount in controversy." *Klaphake v. Columbia Gas Transmission, LLC*, No. 17-CV-1359, 2018 WL 1736791, at *1 (W.D. Pa. Apr. 11, 2018) (citing 28 U.S.C. § 1446(c)(2)(A)(i)). The "defendant's notice of removal

---

[5] "28 U.S.C. § 1441 is to be strictly construed against removal so that the Congressional intent to restrict federal diversity jurisdiction is honored." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citations omitted); *see also A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

Further, where, "as here, a plaintiff contests the defendant's allegation, the defendant must provide evidence establishing that the amount in controversy exceeds $75,000." *Klaphake*, 2018 WL 1736791, at *1 (citing *Dart*, 574 U.S. at 89). The court must then determine "whether a 'preponderance of the evidence' shows that the amount in controversy requirement is satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)); *see also Dart*, 574 U.S. at 88. As evidence "of the jurisdictional amount, the Court may consider the complaint, the notice of removal, and subsequent submissions related to the motion to remand." *Klaphake*, 2018 WL 1736791, at *1.

In evaluating "whether the amount in controversy requirement has been satisfied, the Court considers all relief sought by Plaintiff[]—both monetary and nonmonetary." *Walls v. Repsol Oil and Gas USA, LLC*, No. 4:20-CV-00782, 2020 WL 5502151, at *2 (M.D. Pa. Sept. 11, 2020). The "amount in controversy 'is measured by the value of the object of the litigation.'" *Id.* (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016)). Specifically, in a declaratory judgment action, the "value of property rights ... is the monetary worth of those rights to the plaintiff." *Klaphake*, 2018 WL 1736791, at *2 (citing *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539, 541 (3d Cir. 1995) ("The amount in controversy is measured by reference to the value of the rights which [plaintiff] possesses by virtue of the rights of way.")).

  C.  **Analysis**

    1. **Pristine Plausibly Alleged that the Amount in Controversy Exceeds $75,000 in its Notice of Removal**

The Court begins its analysis by examining Pristine's Notice of Removal to determine whether it includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89.

Pristine's Notice of Removal makes the following allegations with respect to the amount in controversy requirement:

> [National's] Petition requests in its prayer for relief that the Court enter declaratory judgment that the [E]asement between [National] and [Pristine] remains valid …. Pursuant to the language of the [E]asement, [National] is under an obligation to remove thousands of feet of pipes and reclaim the land upon abandonment …. Based upon the experience of Pristine … the cost of removing this amount of piping and restoring and reclaiming the land will cost in excess of $75,000.

(ECF No. 1 at 2–3). The Court finds that these averments constitute a plausible allegation that the amount in controversy exceeds $75,000. Indeed, if: (1) the Easement between the parties is no longer valid, (2) the invalidity of that Easement would result in National being required to remove pipes from Pristine's land and reclaim that land, and (3) that project would involve removing *thousands of feet* of pipe, it is plausible that the amount in controversy in this case exceeds $75,000.

### 2. Pristine has Shown, by a Preponderance of the Evidence, that the Amount in Controversy in this Case Exceeds $75,000

Because National objects to Pristine's statement of the jurisdictional amount, (*see* ECF No. 5), the Court now turns to the issue of whether Pristine has proven, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000. *Dart*, 574 U.S. at 88.

In analyzing this issue, the Court begins by addressing National's contention that the "obligation to remove the pipes is not a matter before the Court for this action." (ECF No. 5 at 2). While the obligation to remove the pipes is not the precise legal issue raised by National's

Petition for Declaratory Judgment (*see* ECF No. 1-2 at 7–10), National does quote the provision requiring removal in its Petition for Declaratory Judgment, (*id.* at 8), and the issue of removing the pipes is central to the question over the amount in controversy in this case. Further, National points to no provision of law in support of its assertion that the Court should decline to consider the removal obligation at this stage in this action. (*See* ECF No. 5). Therefore, the Court will consider the removal obligation at this juncture. *Cf. Texas Eastern Transmission Corp. v. Giannaris*, 818 F. Supp. 755, 756–59 (M.D. Pa. 1993) (considering, in the context of a motion for a preliminary injunction to protect an easement, whether the plaintiff would face civil liability if it could not properly operate its pipelines across the defendants' property using that easement).

Accordingly, the Court turns to *whether* National would have an obligation to remove certain equipment from Pristine's land if the Easement is no longer valid.

On this score, National asserts that Pristine's argument "is based on a non-agreed stipulation that removal of the pipes is [National's] obligation." (ECF No. 5 at 2). However, National offers no specific argument in support of the notion that it would not be obligated to remove pipes from Pristine's property if the Easement is no longer valid. (*See* ECF No. 5). Further, the Easement Agreement between National and Pristine includes the following provision:

> [I]f the Grantee [Cambria Cogen and National, as successor] shall at any time cease to use or maintain the facilities and the non-user shall continue uninterrupted by any use by the Grantee for a period of one (1) year or longer ... the easement and right-of-way herein granted shall at the option of the Grantor [BethEnergy ... and Pristine Resources, as successor] immediately terminate and *the Grantee [National] shall thereupon remove the facilities from said lands of the Grantor [Pristine] with all reasonable speed.*

(ECF No. 1-2 at 8) (quoting *id.* at 20) (emphasis added). The Easement Agreement indicates that the "facilities" that National would be responsible for removing if the Easement is invalid include

"pipelines, the appurtenances thereto, the ... powerline and the appurtenances thereto" in "on, over, across, under or through" Pristine's land. (*Id.* at 12–13). Therefore, based on the plain language of the Easement Agreement, and in the absence of any argument or evidence to the contrary, the Court finds, for purposes of this Motion, that National would be responsible for removing the pipes and other items from Pristine's land if the Easement is no longer valid.

With that finding in place, the final issue before the Court is whether National's obligation to remove the pipes and other items from Pristine's land in the event that the Easement is no longer valid means that the amount in controversy in this case exceeds $75,000.

In addressing that issue, the Court finds persuasive the reasoning in *Texas Eastern Transmission Corp. v. Giannaris*. In that case, the United States District Court for the Middle District of Pennsylvania was tasked with resolving a motion for a preliminary injunction seeking to protect the plaintiff's easement (by which it operated certain pipelines) across the defendants' land. 818 F. Supp. 755. While grappling with the issue of whether the amount in controversy requirement was satisfied, the Middle District noted that the plaintiff "not only would face civil liability if its pipelines are not properly operated and maintained, it could also face financial loss if not permitted to operate because of a failure to abide by the federally mandated regulations." *Id.* at 759. Ultimately, the Middle District found that the plaintiff had demonstrated "by a preponderance of the evidence that the value of the right-of-way, the public interest in safety, *and*

*the costs which Plaintiff would incur if the pipelines were closed in combination,* exceed the jurisdictional amount." *Id.* (emphasis added).[6]

Applying that holding here, the Court likewise finds that the amount in controversy requirement is satisfied. Indeed, in this case, the simple fact that National is seeking a declaration that the Easement is valid strongly implies that the Easement has *some* monetary value to National.[7]

Further, Pristine provided the Court with a declaration, signed by Mr. Neff, indicating that, if National is required to "remove thousands of feet of pipe and restore and reclaim the

---

[6] In *Columbia Gas Transmission Corp v. Tarbuck,* 62 F.3d 538 (3d Cir. 1995), the Third Circuit was confronted with a plaintiff's request for an injunction permanently barring the defendant from encroaching on its rights of way, which the plaintiff used to operate a natural gas pipeline. In support of the plaintiff's contention that the amount in controversy requirement was satisfied, the plaintiff argued that the "damage that might result from a leak (in the pipeline) or that the fines it might have to pay in administrative proceedings would exceed the amount in controversy requirement." *Id.* at 543. In response to these arguments, the Third Circuit wrote the following: "These claims present [the plaintiff's] conjecture, and we will not ordinarily consider such speculative arguments in determining the amount in controversy." *Id.*

The Court finds that this statement by the Third Circuit implicitly supports the holding in *Giannaris*—that is, that when a party seeks declaratory or injunctive relief to protect a property interest, and when that party would experience some additional expense if its interest were not protected, that additional expense is properly included in the amount in controversy calculation (so long as the additional expense is not mere conjecture). Indeed, if this type of potential additional expense were irrelevant to the amount in controversy determination, the Court would anticipate that the Third Circuit would have simply stated that fact in *Columbia Gas*. Instead, the Third Circuit declined to consider the impact of fines or the like *because such impact was speculative.*

[7] Although Pristine did not advance this argument, the Court finds it likely that Mr. Neff's Declaration demonstrates that the value of the Easement itself, even apart from National's obligation to remove, is in excess of $75,000.

Indeed, Mr. Neff's Declaration indicates that National would be responsible for removing "thousands of feet of pipe" if the Easement is invalid. (ECF No. 7-1). Further, Mr. Neff avers that removing the pipe and restoring and reclaiming the land would cost National approximately $716,464.04. (*Id.*). All of this is critical because, if it would cost National several hundred-thousand-dollars to remove thousands of feet of pipe from Pristine's land, it is a fair inference that it would cost National several hundred-thousand-dollars to place those thousands of feet of pipe in land elsewhere in order to obtain water from the pump house and metering station near the Wilmore dam (or to continue to carry out any other use to which National is

11

land[,]" the project would cost National approximately $716,464.04. (ECF No. 7-1). And Mr. Neff stated that this calculation "is based upon the Pennsylvania Department of Environmental Protection bond calculation unit cost for reclamation and on the RS Means Construction Data for 2021." (*Id.*). The Court accepts Mr. Neff's calculation as at least generally accurate, and because his estimate is almost ten times the amount in controversy requirement, the Court has no difficulty finding that it would cost National more than $75,000 to remove the pipes and reclaim Pristine's land if the Easement is no longer valid.[8]

Therefore, when the Court considers the value of the Easement itself to National, coupled with the costs that National would be contractually obligated to incur if the Easement is no longer valid, the Court finds that Pristine has shown by a preponderance of the evidence that the monetary worth of the Easement to National exceeds $75,000. *Klaphake*, 2018 WL 1736791, at *2 (citing *Columbia*, 62 F.3d at 539). Thus, the Court finds that the amount in controversy requirement is satisfied, and the Court has diversity jurisdiction over this action.

## V.  Conclusion

---

currently putting the Easement). This inference, in turn, makes it highly likely that the Easement itself is worth more than $75,000 to National. *See Columbia Gas*, 62 F.3d at 539–42 (using cost of rerouting pipeline as a potential measure of amount in controversy in suit seeking to enjoin defendant from encroaching on plaintiff's rights of way, which plaintiff used to operate a natural gas pipeline); *see also Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602, 604–06 (7th Cir. 2011) (considering cost to plaintiff to build pipeline around defendants' properties in determining amount in controversy in suits by plaintiff seeking declarations that its easements, which it used to operate an oil pipeline, remained in force).

[8] The Court notes that National presents neither a specific argument nor any evidence in support of its position that if it does have to "remove the pipes it would cost far less than $75,000." (ECF No. 5 at 2). And given the fact that National offers no disagreement with Pristine's assertion that National would have to remove *thousands of feet* of pipe, the Court accepts Mr. Neff's declaration to the extent he avers that it would cost more than $75,000 to remove the pipes and restore and reclaim Pristine's land.

In accordance with the foregoing, the Court will deny National's Motion to Remand. (ECF No. 5).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONAL SALVAGE AND SERVICE CORPORATION, | ) ) ) | Case No. 3:21-cv-138 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| PRISTINE RESOURCES, INC., | ) ) | |
| Defendant. | ) ) | |

## ORDER

AND NOW, this 1st day of December, 2022, upon consideration of Plaintiff National Salvage and Service Corporation's Motion to Remand, (ECF No. 5), and for the reasons set forth in the foregoing Memorandum Opinion, it is **HEREBY ORDERED** that Plaintiff's Motion is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE